**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00859-CMA

ROBERT CHAMP, a/k/a JASON KING,

vs.

ARISTEDES ZAVARAS, Executive Director of the Colorado Dept. of Corrections, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

_____

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

_____

        This matter is before the Court on Petitioner Robert Champ's Amended

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Habeas

Application") filed on May 20, 2008.[1]  (Doc. # 5).  Respondents filed an Answer on

December 22, 2008.  (Doc. # 19).  Petitioner filed a traverse on March 23, 2009.  (Doc.

# 27).   Also pending is Petitioner's Motion for Forthwith Order to Expand the Record to

Include Relevant, Material Documentation from State Law Enforcement Officials.  (Doc.

# 40).

_____

        [1]  Because the Petitioner appears *pro se*, the Court construes his filings liberally.
*See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as
his advocate.  *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from the Habeas Application (Doc. # 5),

Respondents' Pre-Answer Response (Doc. # 11), Respondents' Answer (Doc. # 19),

and all attachments and exhibits with respect to these documents.

Petitioner asserts the following claims in his Habeas Application:

- **Claim One**: his trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments to the United States Constitution because counsel: (1) failed to conduct an adequate pretrial investigation into the victim's character, including the victim's reputation in the community, her prior sexual assaults by other men, emotional instability, and her abuse of alcohol and drugs; (2) failed to fully and properly interview witnesses and review documentary evidence; and, (3) admitted on the record throughout the trial that he was ineffective, which should have led the trial court to declare a mistrial.

- **Claim Two:** Petitioner was deprived of his Fourteenth Amendment due process right to a fair trial because:

  (1) the trial court precluded the defense from presenting evidence of the victim's character of not being credible, including her: (a) reputation for abusing drugs and alcohol; (b) mental and emotional instability; and, (c) her multiple victimization by other men and history of false reporting of sexual abuse.

  (2)(a) law enforcement officers and the prosecution failed to preserve the victim's clothing to show that it was cut by hospital personnel and not the Petitioner; (b) law enforcement officers and the prosecution failed to preserve the victim's panties, which potentially would have yielded DNA evidence from other men; (c) the defense was not allowed to present documented medical evidence showing that the victim's stab wound was superficial and not life-threatening; and, (d) authorities did not recover and test the weapon that caused the victim's neck injury.

  (3) the trial court improperly admitted prejudicial hearsay evidence in the form of the victim's excited utterances because the victim was deceased at the time of trial.

(4)(a) the trial court erred in refusing to replace a juror who was sleeping during trial and missed critical parts of the trial proceedings; (b) the trial court refused to allow defense counsel to cross-examine a doctor about smelling alcohol on the victim's breath when she was admitted to the hospital and about the results of a rape examination conducted at the hospital that was negative as to Petitioner's DNA; (c) the trial court denied Petitioner's request to proceed pro se; and (d) the trial court denied defense counsel's request for a continuance.

(5) the trial court admitted the victim's unreliable out-of-court identification of Petitioner.

(6) the trial court denied Petitioner a jury trial on the habitual criminal charges.

- **Claim Three**: Petitioner's right to confrontation under the Sixth Amendment to the United States Constitution was violated because: (1) he was unable to examine the deceased victim at trial; (2) the trial court did not allow the defense to examine the victim's boyfriend regarding his prior domestic violence against the victim; (3) the trial court did not allow the defense to investigate Spiro Middleton (a/k/a Spiro Littlefield) who identified Petitioner as being at the party where he met the victim; (4) the trial court did not allow the defense to cross-examine Detective Ronald Rolf regarding medical information of the alleged victim and prohibited the defense from performing an alternative DNA test of medical information obtained from the victim; and, (5) the trial court improperly admitted prejudicial hearsay from the victim under the excited utterance exception to the hearsay rule.

## A. STATE COURT PROCEEDINGS

Petitioner was charged in Denver District Court with first degree sexual assault, attempted first degree murder, and three habitual criminal counts.[2] The first two charges stemmed from Petitioner's conduct following a party in December 1992. The

---

[2] This general introductory background is taken from the statement of the case and statement of the facts in the Petitioner's opening brief on direct appeal. Pre-Answer Response, Exhibit A at 2-4, 10.

victim, P.T., left the party intoxicated with a man she did not know who had offered to give her a ride home. P.T. went with the man to an apartment in the adjacent building, where he sexually assaulted her at knife point. The man then took P.T. outside to the alley, stabbed her in the neck, and left her for dead.  After P.T. made her way to a nearby house, police were called.  Officer Christian arrived at the scene and saw P.T. bleeding from the wound on her neck. Officer Christian stayed with P.T. for approximately two hours and accompanied her in an ambulance to the hospital. P.T. told Officer Christian that the man with whom she had left the party had sexually assaulted her and stabbed her in the throat.  Later that morning, P.T. identified Petitioner in a six-person photographic lineup.  P.T. died in 1999 of unrelated causes.

Following a jury trial in August 2001, Petitioner was convicted of first degree sexual assault and attempted first degree murder. The trial court subsequently found him guilty of the habitual criminal charges and imposed two concurrent life terms in prison, without possibility of parole until after forty years.

Petitioner's conviction and sentence were affirmed on direct appeal.  *See People v. King*, 121 P.3d 234 (Colo. App. 2005), Pre-Answer Response, Exhibit B.  The Colorado Supreme Court denied Petitioner's request for certiorari review on October 17, 2005.  Pre-Answer Response, Exhibit D.

Petitioner thereafter filed a motion for post conviction relief under Colo. Crim. P. Rule 35(c), which was denied by the trial court on August 16, 2006.  *Id.*; Exhibit E.  The state appellate court affirmed the order on appeal.  *See People v. Jason King*, *a/k/a*

*Robert Champ,* No. 06CA2054 (Colo. App. Dec. 13, 2007) (unpublished), Pre-Answer

Response, Exhibit G.  Petitioner did not request certiorari review by the Colorado

Supreme Court.

## B.    FEDERAL HABEAS PROCEEDING

Petitioner filed his Habeas Application in this Court on May 20, 2008.  Magistrate

Judge Boyd N. Boland directed Respondents to file a Pre-Answer Response to the

Habeas Application limited to addressing the affirmative defenses of timeliness under

28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C.        §

2254(b)(1)(A).  On June 17, 2008, Respondents filed their Pre-Answer Response

arguing that Petitioner failed to exhaust state remedies for several of his claims and that

the Habeas Application should be dismissed as a mixed petition.  Petitioner filed a reply

to the Pre-Answer Response on July 8, 2008.

Magistrate Judge Boland thereafter ordered Petitioner to show cause why the

Habeas Application should not be dismissed as a mixed petition because it contained

both exhausted and unexhausted claims.  (Doc. # 13.)  Petitioner was advised that he

could avoid dismissal of the entire action by voluntarily dismissing the unexhausted

claims.  (*Id.*)  On October 7, 2008, Petitioner filed a response to Magistrate Judge

Boland's show cause order, which he supplemented on November 5, 2008.  (Doc.

## 14, 16).  Petitioner argued that all of his claims are exhausted.  Alternatively, he

asked the Court to dismiss any unexhausted claims.  (*Id.*)

On November 26, 2008, the Court dismissed claims 1(1), 1(2), 1(3), 2(2)(c), 2(4)(b), 3(1), 3(2), 3(3), and 3(4) pursuant to Petitioner's voluntary dismissal of those claims and ordered that the remaining claims be drawn to a district judge. (Doc. # 17.) The Court finds, and Respondents concede, that the claims are timely under 28 U.S.C. § 2244(d). Pre-Answer Response, at 8-9. The Court therefore addresses the merits of claims 2(1)(a), 2(1)(b), 2(1)(c), 2(2)(a), 2(2)(b), 2(2)(d), 2(3), 2(4)(a), 2(4)(c), 2(4)(d), 2(5), 2(6), and 3(5) below.

## II. ANALYSIS

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for writ of habeas corpus may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if:
> (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal

6

quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual

determinations are correct and the Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

The Court applies the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). The Court likewise owes deference to the state court's result if the court reached the merits of the Petitioner's claim, even if the court did not analyze the claim under federal law. *See Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999). Finally, if the state courts failed to adjudicate a federal claim raised by the Petitioner, the Court consider the claim de novo and the deferential AEDPA standard of review does not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## A.    CLAIMS 2(1) AND 2(4)(d)

Petitioner asserts in claim 2(1) that he was denied due process because the trial court precluded the defense from presenting evidence of the victim's character of not being credible, including: (a) the victim's reputation for abusing drugs and alcohol; (b) the victim's mental and emotional instability; and, (c) the victim's multiple victimization by other men and history of false reporting of sexual abuse. Habeas Application at 6, and Addendum at 2. In claim 2(4)(d), Petitioner alleges he was deprived of due process when the trial court denied defense counsel's request for

a continuance so that counsel could further investigate "materially relevant evidence and witnesses." *Id.*, Addendum at 2.

Claim 2(1) appears to challenge evidentiary rulings by the trial court. However, the pertinent state court orders reflect that the trial court never ruled on the admissibility of the character evidence described above. Instead, Petitioner's claim arises out of the trial court's denial of defense counsel's request for a continuance of trial to further investigate the victim's character. The state appellate court resolved Petitioner's claim in the context of whether the trial court erred in denying the request for a continuance:

> Approximately three weeks before trial, defense counsel filed a motion to continue the trial date in order to further investigate the facts of the case and P.T.'s background and character, including any history of false allegations of sexual assault or prior suicide attempts. Following a hearing on the matter, the trial court denied the continuance, holding that the defense had ample time to investigate the case, that there was no showing that additional time would result in the discovery of relevant witnesses or information, and that there was no showing that the information defendant sought to investigate was relevant or admissible under the rape shield statute.

> A division of this court affirmed the trial court's ruling on direct appeal. *King*, 121 P.3d at 241.

> In his Crim. P. 35(c) motion, defendant again claimed he should have been permitted an opportunity to present evidence of P.T.'s character. In denying the motion, the district court concluded that no ruling had been made as to the relevance or admissibility of such evidence, as it had never been produced. Accordingly, we agree with the People's assertion that defendant's postconviction claim is based on the same grounds as the claim he raised on direct appeal. As such, further review is not warranted. *See* Crim. P. 35(c)(3)(VI) and (VII); . . . .

Pre-Answer Response, Exhibit G at 3-4.

The state appellate court determined Petitioner's claim on direct appeal as follows:

> Defendant's motion to continue was predicated on the lack of preparation of defense counsel. Specifically, defendant argued that his counsel needed more time (1) to interview a witness who had not been sub-poenaed, (2) to obtain P.T.'s medical records, (3) to contact a doctor who had conducted a rape kit analysis on P.T. that came back with negative results for semen, (4) to interview a paramedic who claimed that P.T. had an odor of beer on her breath, and (5) to contact the doctor who had evaluated P.T.'s mental health on the night of the assault.
>
> The record shows that the prosecution had turned over to defense counsel information concerning the potential witness and, furthermore, that his testimony would not have been significant. Additionally, medical records had been available to the defense for five months and could have been reviewed previously. Also, another witness testified why the rape kit analysis came back with negative results in 1992. Further, the parties stipulated that the paramedic had detected the odor of alcohol on P.T.'s breath. Finally, the record shows that the doctor in question was living in India and that contacting him would be difficult.
>
> Accordingly, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a continuance. *See People v. Bakari*, 780 P.2d 1089 (Colo.1989).

*King*, 121 P.3d at 241.

The Court construes claim 2(1) liberally as a federal due process challenge to the trial court's denial of defense counsel's request for a trial continuance to conduct further investigation of the victim's character. The Court further notes that Claim 2(1) appears to be duplicative of Claim 2(4)(d). Petitioner raised the substance of both claims before the trial court in a motion to continue and in his appeal of the court's denial of that motion. State Court Record, Vol. 1 at 112-113; Vol. 6 at 3-12; Pre-Answer Response, Exhibit A at 14-18. Because the state appellate court addressed the merits of the issue

10

on direct appeal, as set forth above, Respondents' contention that Petitioner procedurally defaulted the claim in his subsequent state post conviction proceeding is without merit. *See Breechen v. Reynolds*, 41 F.3d 1343, 1358 (10th Cir. 1994) ("If a state court addresses the merits of a particular federal claim on direct appeal, . . . its subsequent refusal to grant 'further' state review in an application for postconviction relief should be given no effect and does not constitute a procedural bar for purposes of federal habeas corpus review.") (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 804 n.3 (1991)); *see also Cone v. Bell*, 129 S.Ct. 1769, 1781 (2009).

Turning to the merits, the trial court's arbitrary denial of a request to continue the trial may violate due process. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Arbitrariness is evaluated based on the circumstances of the case, and particularly the trial judge's reasons in denying the request for a continuance. *See Ungar*, 375 U.S. at 589; *Case v. Mondragon*, 887 F.2d 1388, 1396 (10th Cir.1989) ("[W]hen a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion, but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process.") (internal quotation marks omitted). The Court's analysis focused on the "need for a continuance and the prejudice or lack of prejudice resulting from its denial, in the context of a fundamental fairness evaluation." *Case*, 887 F.2d at 1397.

The state trial court's factual findings supporting its denial of Petitioner's motion for a continuance–that the defense had ample time to investigate the case, that there was no showing additional time would result in the discovery of relevant witnesses or information, and that there was no showing that the information defendant sought to investigate was relevant or admissible under the rape shield statute–are entitled to a presumption of correctness under 28 U.S.C. § 2254(e). *See* State Court Record, Vol. 6 at 16-17, 21. Petitioner has failed to rebut the state court findings with any clear and convincing evidence to the contrary. *Id.* Accordingly, this Court finds that the state courts did not unreasonably determine the facts in light of the evidence presented. The Court further finds and concludes that the state appellate court's determination was not contrary to or an unreasonable application of federal law because Petitioner has not shown that the trial court's denial of a continuance was arbitrary, or that he was prejudiced as a result. Petitioner is thus not entitled to federal habeas relief on claims 2(1)(a), 2(1)(b), 2(1)(c) and 2(4)(d).

**B.    CLAIM 2(2)**

For his next claim, Petitioner asserts that he was denied due process because law enforcement officers and the prosecution: (a) failed to preserve the victim's clothing to show that it was cut by hospital personnel and not the Petitioner; (b) failed to preserve the victim's panties, which potentially would have yielded DNA evidence from other men; and, (d) failed to recover and test the weapon that caused the victim's neck

injury because such tests may have revealed that Petitioner was not the attacker.

Habeas Application, Addendum at 2.

The Due Process Clause of the Fourteenth Amendment prohibits the State's destruction of evidence with "an exculpatory value that was apparent before it was destroyed" where the evidence might not be available to the defendant through other means. *California v. Trombetta*, 467 U.S. 479, 489 (1984). However, where the police fail to preserve "potentially useful" evidence that might have been exculpatory if subjected to tests, a defendant must prove that the police acted in bad faith in destroying or failing to preserve the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). The presence or absence of bad faith necessarily turns on the government's knowledge of the evidence's potential exculpatory value. *See Youngblood*, 488 U.S. at 56 n.*

The state appellate court resolved Petitioner's claim in the state post conviction proceeding as follows:

> Defendant next contends that the district court erred in rejecting his claim that the state failed to preserve exculpatory evidence. We disagree.
>
> To demonstrate that the State's failure to preserve potentially exculpatory evidence violated the Due Process Clause of the United States or Colorado Constitution, a defendant must establish that (1) the evidence was destroyed by the prosecution; (2) the evidence possessed exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means. *People v. Enriquez*, 763 P.2d 1033, 1036 (Colo. 1988).
>
> Defendant maintains here that if all the victim's clothing had been preserved, the defense would have been able to show that medical personnel, not defendant cut her clothing. He notes that no buttons

from defendant's shirt were found, and that neither the knife the victim saw the attacker armed with nor the victim's panties were recovered. He maintains that if the knife had been recovered there would have been reasonable doubt that he was the perpetrator of the crime. He further claims that the amount of blood on the clothing would have established that the knife wound was minuscule.

The district court denied defendant's claim, noting that defendant did not allege facts that would show that a knife or additional clothing was recovered from the scene. The court held that the state cannot be held under an obligation to preserve evidence that it does not and did not ever possess. Further, it concluded that defendant's speculations about the exculpatory effect of the evidence, had it been found, were insufficient to support a dismissal of the charges.

We agree with the district court's conclusions. [citation omitted]. Accordingly, we conclude there was no violation of defendant's due process rights.

Pre-Answer Response, Exhibit G at 4-5.

The state appellate court applied a state standard equivalent to the *Trombetta* test in resolving Petitioner's claim. The Court finds that the state court's determination was not contrary to or an unreasonable application of *Trombetta* because Petitioner's bare allegations fail to demonstrate that the victim's clothing or the knife possessed apparent exculpatory value. *Trombetta*, 467 U.S. at 489. The Court further finds that the appellate court's determination of the facts was not unreasonable because Petitioner did not provide the state courts with any information to substantiate his claim.

To the extent Petitioner also claims that the prosecution failed to preserve *potentially* exculpatory evidence, in violation of *Youngblood*, his claim fails because he does not point to any facts suggesting bad faith on the part of law enforcement authorities. *See Youngblood*, 488 U.S. at 58 ("Unless a criminal defendant can show

bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *see also Snow v. Sirmons*, 474 F.3d 693, 716 (10th Cir. 2007) (denying habeas petitioner's claim under *Youngblood* where petitioner's assertion that lost material was potentially exculpatory was conclusory and petitioner "[took] no specific posture as to whether the tapes were lost as a result of bad faith by the police").

Accordingly, the Court finds and concludes that Petitioner is not entitled to federal habeas relief on claim 2(2).

## C.     CLAIMS 2(3) and 3(5)

In claims 2(3) and 3(5), Petitioner asserts that he was deprived of his Fourteenth Amendment due process right to a fair trial and his Sixth Amendment confrontation right when the trial court admitted testimony by Officer Christian about statements made to her by the victim following the attack. Habeas Application, Addendum at 2-4. The victim was deceased at the time of Petitioner's trial. *Id.*

### 1.     Due Process Claim

Generally, the state court's evidentiary rulings are matters of state law not subject to federal habeas review unless the admission of evidence rendered Petitioner's trial fundamentally unfair, in violation of his due process rights. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) ("On habeas review, we will not disturb the state court's

evidentiary rulings unless the appellant demonstrates that the court's error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.") (internal quotation marks omitted).

In addressing Petitioner's claim on direct appeal, the state appellate court initially determined that the trial court's admission of the hearsay statements of the victim as excited utterances was proper under C.R.E. 803(2). *King*, 121 P.3d at 237-38. The appellate court further found that the excited utterance exception extended to the victim's statements made in response to police questioning, under the circumstances presented. *Id.* at 138. The appellate court concluded that the trial court "did not abuse its discretion in determining that the circumstances surrounding P.T.'s statements showed that they were made spontaneously in reaction to the assault and resulting injuries. Therefore, the trial court did not abuse its discretion in finding that P.T.'s statements were excited utterances." *Id.*

Petitioner's due process claim fails to the extent Petitioner is challenging the state courts' rulings based on an erroneous application of Colorado's evidentiary rules. *See Estelle*, 502 U.S. at 67-68. Moreover, even if the trial court erred in admitting Officer Christian's testimony about the victim's statements, Petitioner cannot show that the evidence was so grossly prejudicial that it fatally infected the trial and deprived him of due process. *See Fox*, 200 F.3d at 1296; *see also Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

The evidence presented at trial was that the victim immediately identified Petitioner as "the person who raped [her]" from a police photo array a few hours after the attack; Officer Christian collected the victim's torn and bloody clothes within two hours after the attack; a semen sample matching the Petitioner's DNA profile was found on the victim's pantyhose; samples taken from blood found on a vehicle and in the snow in the alley down the block from the building where the sexual assault occurred matched the victim's DNA; and, several witnesses observed the stab wound in the victim's neck and testified that it was bleeding profusely.  Trial Transcripts, Vol. 7 at 80-86; Vol. 8 at 14-15, 22, 24-27, 48-50, 75, 95-99, 102-03, 143-160.

The evidence against Petitioner was substantial, without the admission of the victim's statements, to support the jury's guilty verdicts.  Thus, the admission of the statements did not render Petitioner's trial constitutionally unfair under the Due Process Clause.  Accordingly, the Court finds and concludes that the state appellate court's ruling was not contrary to or an unreasonable application of federal due process law, unless the admission of the victim's out-of-court statements violated Petitioner's Sixth Amendment confrontation rights.

2.    Confrontation Claim

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  An out-of-court statement that falls within an exception to a hearsay rule under a state's evidentiary rules must be excluded from

a defendant's trial if its admission would deprive him of his constitutional right of confrontation. *See Dutton v. Evans*, 400 U.S. 74, 80-82 (1970); *Crawford v. Washington*, 541 U.S. 36 (2004) (the trial court's admission of an unavailable witness's testimonial statements against a defendant at trial violates the defendant's confrontation rights when the defendant has no opportunity to cross examine the witness).

The state appellate court resolved Petitioner's confrontation claim as follows:

The accused in a criminal case has a constitutional right to confront and cross-examine witnesses against him or her. U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 25.

Prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), a hearsay statement made by an unavailable witness was admissible against a criminal defendant if the statement fell within a firmly rooted hearsay exception. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). However, in overruling *Ohio v. Roberts*, the Court determined in *Crawford* that the Sixth Amendment requires that testimonial statements of an unavailable declarant in a criminal prosecution are admissible only if the defendant has had a prior opportunity to cross-examine the declarant. *Crawford, supra*; *see also People v. Fry*, 92 P.3d 970 (Colo. 2004). Therefore, the issue here is whether P.T.'s statements to Officer Christian were testimonial interrogation so as to render them inadmissible under *Crawford*. We conclude that the statements were nontestimonial.

Although the Court declined to specify what constitutes a "testimonial" statement, it determined that testimonial statements need not be given under oath. *Crawford, supra*, 541 U.S. at 51-52, 124 S.Ct. at 1364-65. The Court listed as examples of testimonial statements, "ex parte in-court testimony or its functional equivalent . . . material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford, supra*, 541 U.S. at 51, 124 S.Ct. at 1364 . . . .

The Court noted that statements taken by police officers in the course of interrogations are testimonial. However, the Court did not determine

whether any police questioning was testimonial, other than stating that the term "interrogation" should be used in its colloquial sense, rather than any technical legal sense. *Crawford, supra*, 541 U.S. at 52, 124 S.Ct. at 1365. . . .

We find the analysis in *Fowler* [*v. State*, 809 N.E.2d 960 (Ind. Ct. App. 2004) (transfer granted Dec. 9, 2004)] and related cases to be persuasive and follow it here. Officer Christian arrived upon the scene to find the victim bleeding from her neck. She applied pressure to the wound, and it was necessary for her to ride in the ambulance with the victim to continue to apply pressure to stop the bleeding. Although Officer Christian remained at the hospital with the victim for about two hours, P.T. was still distressed by the assault and was in a substantial amount of pain from her injuries. P.T.'s statements were not made in a formal setting such as a police station. Nor were the statements elicited by Officer Christian in a deliberate manner to obtain incriminating evidence against defendant.

Although the statements made by the declarants in many of the [cases from other jurisdictions] were made closer in time to the occurrence of the incident or crime, we note that, unlike the injuries in those situations, P.T.'s injuries were possibly life threatening. Therefore, it took an extended period of time for the doctors to stabilize P.T., which resulted in an extended period of pain and distress. The seriousness of P.T.'s injuries supports the nontestimonial nature of the statement because under such pain and distress, it is highly unlikely that P.T. or any reasonable person would make any statement with the expectation that it would subsequently be used prosecutorially.

We also agree with the *Fowler* court's conclusion that classification of a statement as an excited utterance, while not dispositive, supports a conclusion that a statement is nontestimonial.  An excited utterance by definition is one made before the declarant has had an opportunity to reflect on the event.  Therefore, it is consistent with the definition of an excited utterance to conclude that it is not a statement which a declarant would reasonably believe at the time it was made might later be used at trial. . . .

Accordingly, we hold that where, where as here, a victim makes an excited utterance to a police officer, in a noncustodial setting and without indicia of formality, the statement is nontestimonial interrogation under *Crawford.* We recognize that there may nevertheless be unanticipated circumstances, similar in nature, that would warrant a different conclusion.

Thus, we conclude that P.T.'s statements are nontestimonial, and therefore, *Crawford* does not apply. Nonetheless, we must determine whether such nontestimonial hearsay satisfies the test set forth in *Roberts.* [citation omitted]. Because P.T. was unavailable to testify and an excited utterance is a firmly rooted hearsay exception, we conclude that it does. . . .

Accordingly, we agree with the trial court's conclusion that P.T.'s statements did not violate defendant's right of confrontation and, thus, were admissible.

*King,* 121 P.3d at 238-241.

The state appellate court applied the appropriate legal standard in resolving

Petitioner's confrontation claim under *Crawford* because *Crawford* was decided while

his direct appeal was pending.  *See Griffith v. Kentucky,* 479 U.S. 314, 322-23 (1987).

The linchpin of constitutionality under *Crawford* is whether the out-of-court statement

admitted against the defendant at trial is testimonial:

The text of the Confrontation Clause reflects this focus. It applies to "witnesses" against the accused-in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

541 U.S. at 51.

In *Crawford*, the Supreme Court held that "[s]tatements taken by police officers in the course of interrogations" are testimonial.  541 U.S. at 52.  However, the specific facts of *Crawford* did not compel the Supreme Court to define precisely what it meant by the term "testimonial."  *Id.* at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'")  Nor did the court delineate what it meant by the term "police interrogation."  *Id.*  at 52-53 n.4 ("Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation,' and we need not select among them in this case [because the witness's recorded statement knowingly given in response to structured police questioning] qualifies under any conceivable definition.")  Thus, the Supreme Court in *Crawford* did not provide an exhaustive classification of all conceivable statements in response to police questioning as testimonial or non testimonial.

The Court finds that the state appellate court's determination of Petitioner's claim was not contrary to controlling Supreme Court precedent. *Crawford* did not hold that any utterance made in response to police questioning is testimonial.  Moreover, Petitioner's claim presents facts different from those addressed by the *Crawford* Court.  *See Williams*, 529 U.S. at 405-06; *House,* 527 F.3d at 1018.  Further, the Court cannot find that the state appellate court unreasonably refused to extend *Crawford* to the circumstances presented here.  In *Crawford*, the Supreme Court indicated that classification of a statement as testimonial requires consideration of the formality of the circumstances in which the statement was given and whether the statement was made

for the purpose of establishing some fact.  541 U.S. at 51.  Here, the state appellate

court determined that P.T.'s statements were not the product of formal police

interrogation based on the following facts:  Officer Christian accompanied P.T. to the

hospital in an ambulance because P.T. was continuously bleeding from her neck; during

the ensuing two-hour period, P.T. continued to experience substantial pain and distress

from potentially life-threatening injuries; the statements elicited from P.T. by Officer

Christian during that period were not obtained in a deliberate manner to obtain

incriminating information against the Petitioner; and, the seriousness of P.T.'s injuries,

and the accompanying level of pain and distress, made it highly unlikely that P.T. made

any statement with the expectation that it would subsequently be used prosecutorially.

*King*, 121 P.3d at 240.  These factual findings are presumed correct and Petitioner has

failed to rebut them with clear and convincing evidence. Under the circumstances, the

"testimonial" nature of the statements made by the victim is less clear than the facts

presented in *Crawford* and it was reasonable for the state appellate court to conclude

that the victim's statements were not testimonial.

In sum, the Court finds and concludes that the state appellate court's

determination of Petitioner's claim was not contrary to or an unreasonable application

of *Crawford*, nor was it unreasonable in light of the evidence presented.  Petitioner is

therefore not entitled to federal habeas relief on claim 3(5) asserting a violation of his

Sixth Amendment right of confrontation,[3] or on claim 2(3) asserting a violation of his Fourteenth Amendment due process rights.

## D.    CLAIM 2(4)(a)

Petitioner next claims that he was denied due process when the trial court refused to replace a sleeping juror who missed critical parts of the trial. Habeas Application, Addendum at 3.

At trial, defense counsel notified the court three times that Juror B was sleeping and asked the court to replace the juror before the prosecution presented its final witness.  Trial Transcript, Vol. 8 at 58-59, 82-83, and 133.  The trial court denied the defense motion stating:

> THE COURT:  I have observed [Juror B] on occasion with his eyes closed [as] if he was sleepy. And other occasions he will sit with his hand over his forehead and you can't tell whether his eyes are closed. But on some of those he is vigorously taking notes, even though as you just look at his face it looks like he's nodding off or sleeping.
>
> Since it was first raised, I have tried to watch him reasonably carefully and I don't think–there's some evidence of eyes closing on a few occasions. I don't think there is sufficient evidence that he has actually been asleep or missed substantial portions of the evidence to warrant the intrusion of either questioning him or certainly excluding him from the jury.

Trial Transcript, Vol. 8 at 134.

The Colorado Court of Appeals affirmed:

---

[3]   The Court notes that the state appellate court's additional analysis of the reliability of the victim's non testimonial statement under *Ohio v. Roberts* was incorrect because *Crawford* over-ruled *Roberts* in its entirety by holding that the Sixth Amendment Confrontation Clause does not apply to non testimonial statements.  *See Whorton v. Bockting,* 549 U.S. 406, 419-20 (2007).  However, the state court's superfluous *Roberts* analysis does not affect this Court's determination of Petitioner's claim.

Defendant argues that the trial court abused its discretion when it refused to replace an apparently sleeping juror with the alternate juror. We are not persuaded.

Jury misconduct that materially affects the substantial rights of a party so as to prevent a fair and impartial trial may serve as grounds for a new trial. *People v. Herrera*, 1 P.3d 234 (Colo. App. 1999). When evaluating a claim of juror misconduct, we should not reverse the trial court's determination in the absence of an abuse of discretion, and a defendant must show that he or she was prejudiced by the alleged misconduct. *People v. Thurman*, 948 P.2d 69 (Colo. App. 1997). The prejudicial effect of the alleged misconduct is a question of fact to be determined in light of all of the circumstances of the trial. *People v. Herrera*, supra.
. . .

Based upon the [trial court's] findings, we conclude that the trial court did not abuse its discretion in not replacing Juror B. While it may have been the better practice to question Juror B to determine whether he thought he had been dozing off and, if so, to what extent, the trial court's observations support its conclusion that removing Juror B was not necessary.

*King*, 121 P.3d at 241-42.

The trial court is in the best position to assess a juror's misconduct, including sleeping during the presentation of testimony. *See Wainwright v. Witt*, 469 U.S. 412, 424-26 (1985); *accord Brecheen*, 41 F.3d at 1350 (federal habeas review of a state trial court's rulings on juror impartiality is limited because "the state trial judge had the benefit of observing the general demeanor of the jurors as the basis for his general finding.") (internal quotation marks and brackets omitted). The trial court's factual findings are presumed correct in this federal habeas proceeding. *See* 28 U.S.C. § 2254(e). Petitioner has not proffered any clear and convincing evidence to contradict the trial court's factual findings about Juror B. *See id.* The Court finds and concludes

that the state appellate court's determination that a new trial was not warranted, based on the trial court's observations of the juror, was not unreasonable in light of the evidence presented, nor was it contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court. Moreover, Petitioner has not demonstrated that he was actually prejudiced by the trial court's failure to dismiss Juror B. *See Vigil v. Zavaras*, 298 F.3d 935 (10th Cir. 2002) (federal habeas court may grant relief based on alleged juror misconduct only when that misconduct had a substantial and injurious effect on the jury's verdict, citing *Brecht*); *accord Breechen*, 41 F.3d at 1350. Accordingly, Petitioner is not entitled to habeas relief on claim 2(4)(a).

**E.     CLAIM 2(4)(c)**

Petitioner asserts that he was deprived of due process because the trial court refused to allow him to proceed pro se. Habeas Application, Addendum at 3.

At a pretrial hearing on July 13, 2001, Petitioner asked the trial court to appoint a different lawyer to represent him. State Court Record, Vol. 5 at 3-8. Petitioner asserted that there was a conflict of interest between him and appointed counsel because of counsel's asserted lack of preparation for trial. *Id.* The court denied Petitioner's request to appoint different counsel. *Id.* at 8. Petitioner did not advise the court at that time that he wanted to proceed pro se. *Id.* On August 13, 2001, the day before Petitioner's trial was set to commence, the trial court held a hearing on the defense counsel's motion to continue the trial. State Court Record, Vol. 6. After the

court denied defense counsel's motion to continue, *id.* at 16-17, Petitioner addressed

the court with a litany of complaints about his counsel's shortcomings and concluded

with the following:

> THE DEFENDANT: Mr. Davis has been ill-prepared at my prior hearings and he's not prepared today by his own assertions. Your honor, I can go on and on about Mr. Davis' ineffective counsel. He's not a trial lawyer, and my rights have been violated because he fully expected a plea agreement when he should have been preparing for trial. I'm begging the Court to appoint conflict-free representation and to continue this matter until such time as necessary for new counsel to review this case and try to amend the blunders made by the Public Defender's Office. If this Court refused this humble plea for a fair trial, then against my will I'll have to proceed pro se and ask you.

> THE COURT: All right. I'm going to deny your request, as I did at the last hearing you made essentially the same request at the last hearing, and Mr. King, I'm going to deny your request for different counsel. You haven't shown anything like a conflict of interest with Mr. Davis.

State Court Record, Vol. 6 at 20-21.

Under *Faretta v. California*, 422 U.S. 806, 835 (1975), a defendant in a criminal

case has a right to conduct his own defense under the Sixth Amendment provided that

he knowingly and intelligently waives his right to counsel. The Sixth Amendment right to

self-representation is triggered by the defendant's clear and unequivocal declaration of

his intention to proceed pro se. *Id.*; *see also Munkus v. Furlong*, 170 F.3d 980, 983-84

(10th Cir. 1999) (citing *Faretta*).

In addressing Petitioner's claim, the state appellate court determined that he did

not assert his right to self-representation unequivocally:

A defendant in a criminal case has a right to self-representation under both the United States and Colorado Constitutions. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Arguello*, 772 P.2d 87 (Colo. 1989).

Before a trial court may allow a defendant to waive his or her constitutional right to counsel and proceed pro se, the defendant must unequivocally and timely assert his or her constitutional right to self-representation. *People v. Harris*, 914 P.2d 434 (Colo. App.1995).

Here, defense counsel filed a motion to continue the trial date about three weeks before the scheduled trial. Defense counsel asserted that witnesses were difficult to find because of the age of the case and the defense needed more time to investigate the facts of the case as well as the victim's background. At a hearing on the motion the day before trial, defense counsel advised the court that he was not ready for trial and that he would be ineffective if forced to represent defendant the following day. Immediately after this statement, defendant addressed the court as follows:

> I'm begging the court to appoint conflict-free representation and to continue this matter until such time as necessary for new counsel to review this case and try to amend the blunders made by the Public Defender's Office. If this court refuses this humble plea for a fair trial, then **against my will** I'll have to proceed pro se and ask you.

(Emphasis added).

Even if we assume that defendant's request for self-representation was timely, it was not unequivocal. The thrust of defendant's statement to the court was that he was requesting the appointment of new counsel and a continuance. Defendant then asserted that if the court denied these requests, he would have to proceed pro se against his will and ask the court for permission to do so. This statement did not constitute an unequivocal request for self-representation. Further, after the trial court denied defendant's request for appointment of new counsel and a continuance, defendant did not pursue his interest in proceeding pro se.

> Under these circumstances, we conclude that the trial court did not err in denying defendant's request for self-representation.

*King*, 121 P.3d at 237.

The state court record reflects that Petitioner twice asked the court for a change of counsel and those requests were denied. On neither occasion did the Petitioner make an affirmative request to proceed to trial without counsel. Instead, Petitioner advised the court the day before trial that if his request for substitution of counsel was denied, he would have to proceed pro se and "ask [the court]" for permission to do the same. Petitioner's statement to the court was ambiguous because it suggested that he would be making a future request to proceed pro se if the court did not appoint new counsel. Petitioner never followed up his statement with a request to represent himself at trial after the court denied his request for substitution of counsel.

The Court finds and concludes that the state appellate court's determination was not contrary to or an unreasonable application of *Faretta,* nor was the decision an unreasonable determination of the facts in light of the evidence presented. In *Faretta,* the defendant specifically requested that he be permitted to represent himself. Here, the Petitioner merely indicated that he would make a follow up request with the court to represent himself if the court denied his motion to appoint new counsel. The state appellate court did not act unreasonably in concluding that Petitioner's statement to the trial court regarding self-representation was not a clear and unequivocal request to proceed pro se. *See also United States v. Callwood*, 66 F.3d 1110, 1114 (10th Cir.1995) (finding that defendant failed to make an unequivocal request for self-

28

representation where he complained during trial that his counsel was not asking witnesses the questions that defendant wanted asked, informed the court he "would prefer for [counsel] not to represent [defendant] or at least the right to question the [witness himself]," stated several times that he did not believe he was receiving "proper representation," and did not make any other statement regarding his desire for self-representation); *Burton v. Collins,* 937 F.2d 131, 132-34 (5th Cir.1991) (finding no clear and unequivocal waiver where a defendant informed the judge he wanted to fire his attorney, the court denied the request for substitution of counsel, and defendant then asked, "May I represent myself?"); *U.S. v. Mendez-Sanchez*, 563 F.3d 935, 946 (9th Cir. 2009) (defendant's statement to trial court that self-representation would be better than representation by appointed counsel, which was made before the court denied his motion for substitution of counsel, was not an unequivocal demand for self-representation where the defendant made additional ambiguous statements about his desire to proceed pro se after court's ruling). Accordingly, Petitioner is not entitled to federal habeas relief on claim 2(4)(c).

### F.  CLAIM 2(5)

Petitioner next claims that the trial court's admission of the victim's out-of-court identification of Petitioner at trial violated due process because the identification was unreliable. Habeas Application, Addendum at 3. Petitioner maintains that the victim was confused, and was high on marijuana and intoxicated at the time the identification was made. *Id.*

"When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *U.S. v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968) and *Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir.1987)). The Court need not reach the second prong unless the Court first determines that the array was impermissibly suggestive. *Johnston,* 823 F.2d at 391. To determine whether a photo array was impermissibly suggestive, the Court considers the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves. *Sanchez*, 24 F.3d at 1262. A six-person photograph lineup is not *per se* unconstitutional. *Id.* at 1262.

The state appellate court addressed Petitioner's due process claim in the state post conviction proceeding under a state law standard that is virtually identical to the federal standard. *See* Pre-Answer Response, Exhibit G at 6-7. The appellate court resolved Petitioner's claim as follows:

> Defendant also contends that the victim's identification of him in the photographic lineup was unreliable because of her "confused state of mind." We disagree.
>
> Prior to trial, defendant filed a motion to suppress the victim's identifi-cation as unreliable and unfairly prejudicial. Specifically, he claimed that the detective showed the photographic array to the victim while she was being treated for her injuries in the hospital and was in critical condition, and that she was extremely upset, suffered from possible mental health problems, and was under the influence of alcohol, and was "quite likely

medicated for her injuries." Following an evidentiary hearing, the trial court denied the motion to suppress.

. . .

. . . [T]he trial court found there was "nothing unduly suggestive about the officer's showing of the photo array to the victim." Specifically, the court found that there was nothing unduly suggestive about the photos or the procedure used by the detective, that P.T. had a sufficient opportunity to observe her assailant to make an accurate identification, that neither officer though she was under the influence of alcohol or detected any odor of alcohol, and that any evidence of mental health problems or the degree to which she was upset went to the weight of the evidence rather than its admissibility.

Under these circumstances, defendant's allegations concerning P.T.'s mental and physical condition were insufficient to support a finding of a due process violation.

Pre-Answer Response, Exhibit G at 6-8.

The trial court's factual findings, after holding an evidentiary hearing in connection with Petitioner's claim, are presumed correct and Petitioner does not point to any clear and convincing evidence to the contrary. The Court has reviewed the transcript of the motion to suppress hearing. The investigating detective testified that approximately five hours after the victim was attacked, he showed her a series of photographs and asked her if she would be able to identify the person who assaulted her. State Court Record, Vol. 5 at 51, 56. The victim responded in the affirmative, immediately pointed to photograph # 4, and told the detective that the man in that photograph was the person who raped her. *Id.* at 51-52. The victim also stated that the person who raped her was the same person who stabbed her. *Id.* at 52. The detective testified that the victim did not appear to be under the influence of alcohol, illegal drugs

or pain medication.  *Id.* at 56-57.  Defense counsel did not cross examine the detective about the details of the photographs or make any argument to the court concerning the same.  State Court Record, Vol. 5 at 58-67, 108.   In short, there is nothing in the state court record to indicate that the detective's presentation of the photo array to the victim was suggestive in any way.

The Court finds and concludes that the state appellate court's determination that the photo array was not impermissibly suggestive was neither contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. The Court therefore need not address Petitioner's assertion that the victim's identification of him was unreliable. *Johnston,* 823 F.2d at 391*.*  Petitioner is not entitled to federal habeas relief on claim 2(5).

## G.     CLAIM 2(6)

Finally, Petitioner asserts that his due process rights were infringed when the trial court denied him a jury trial on the habitual criminal charges.  Habeas Application, Addendum at 4.

In *Apprendi v. New Jersey*, 530 U.S. 455, 490 (2000), the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  The Court's exclusion of prior convictions from the general rule was based on its prior decision in *Almendarez-Torres v. United States*,

523 U.S. 224 (1998), which held that recidivism need not be charged in an indictment in order for a judge to use prior convictions to enhance a defendant's sentence. *Apprendi*, 530 U.S. at 487-88. The *Apprendi* Court mentioned the possibility that *Almendarez-Torres* may have been "incorrectly decided." *Apprendi*, 530 U.S. at 489. However, the Supreme Court has not overruled *Almendarez-Torres*. *See e.g. United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming the recidivism exception announced in *Apprendi* ). Accordingly, Petitioner is not entitled to federal habeas relief unless his sentence was enhanced in violation of *Apprendi*.

The state appellate court resolved Petitioner's claim as follows:

Prior to 1995, a defendant was entitled to a jury trial on habitual criminal charges under former [COLO. REV. STAT.] § 16-13-103. [citations omitted]. That statute, now codified at § 18-1.3-803, C.R.S. 2004, was amended such that it applied to all informations filed on or after July 1, 1995.

Here, although the incident which formed the basis for the charges against defendant occurred in 1992, the information was filed in 2001. Accordingly, under § 18-1.3-803, defendant was not entitled to a jury trial on the habitual criminal charges against him, notwithstanding the prosecutor's mistaken belief to the contrary.

Further, defendant did not have a constitutional right to a jury trial on the habitual criminal counts. *People v. Edwards*, *supra; see also People v. Johnson*, 74 P.3d 349 (Colo. App. 2002).

Accordingly, the trial court did not err in holding a bench trial on the habitual criminal counts against defendant.

*King*, 121 P.3d at 243.

Although the state appellate court did not analyze Petitioner's claim under *Apprendi*, its conclusion that Petitioner was not entitled to a jury trial on the habitual

33

criminal charges was not contrary to or an unreasonable application of that decision. *See Aycox*, 196 F.3d at 1177-78. In Colorado, the determination of whether a defendant is a repeat offender or habitual criminal rests solely upon whether he has prior convictions. *See* §§ 18-18-405(2)(a)(II),18-1.3-801, C.R.S. (2001). Because *Apprendi* does not require a jury to determine whether a defendant has prior convictions which could be used to enhance his sentence, Petitioner is not entitled to federal habeas relief on claim 2(6).

## H.  Motion to Expand Record

On June 3, 2010, Petitioner filed a Motion for Forthwith Order to Expand the Record (Doc. # 40), pursuant to which Petitioner asks the Court to expand the record in this case to include: (1) information concerning the credibility of potential witness, Spiro Middleton, and his availability to testify at Petitioner's trial; (2) the letter the victim sent to the investigating detective a few months after the attack; (3) the police photo array from which the victim identified Petitioner as the perpetrator; (4) the victim's medical records; (5) the victim's police records; and, (6) any other documentation obtained by the State which was used or could have been used against Petitioner at trial. (Doc. # 40).

The Court finds that Petitioner's request to expand the record is without merit for the following reasons. First, information pertaining to potential witness Spiro Middleton is only relevant to claim 3(3), which Petitioner has procedurally defaulted. Second, the jury considered the letter written by the victim to the investigating detective after the attack and convicted Petitioner of the crimes charged based on other substantial

evidence supporting the guilty verdicts. Third, Petitioner has not proffered any clear and convincing evidence to rebut the trial court's factual findings that the police photo array was not impermissibly suggestive. Fourth, information pertaining to the victim's character is only relevant to claims 1, 3(2) and 3(4), which Petitioner has procedurally defaulted, and to claim 2(1), which the Court has found to be without merit. The requested supplementation of the record would not change the Court's analysis for claim 2(1). Finally, Petitioner's request to supplement the record with any information that the prosecution used or could have used against him at trial is too vague to provide a basis for the requested relief.

### III.  CONCLUSION

Accordingly, it is ORDERED that Petitioner Robert L. Champ's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. #  5) is DENIED and the civil action is dismissed WITH PREJUDICE.  It is

FURTHER ORDERED that Petitioner's Motion for Forthwith Order to Expand the Record to Include Relevant, Material Documentation from State Law Enforcement Officials (Doc. # 40) is DENIED.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Petitioner Robert L. Champ has not made a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c).

Dated this __21st__ day of June, 2010.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge